<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **GARDENIA MOORE**  *Plaintiff,*  v.  **CAROLYN W. COLVIN,**  **Acting Commissioner of Social Security,**  *Defendant.* | **Civil Action No. 15-3758**  **OPINION** |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiff Gardenia Moore's ("Plaintiff") request for review, pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), of the Commissioner of Social Security Administration's ("Commissioner") denial of supplemental security income benefits ("SSI" or "Disability Benefits") to Plaintiff. For reasons set forth below, the Commissioner of Social Security's ("Commissioner") decision is **AFFIRMED**.

**I.     APPLICABLE LAW**

**A.  Standard of Review**

The Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court must affirm the Commissioner's decision if there exists substantial evidence to support the decision. 42 U.S.C. § 405(g); <u>Markle v. Barnhart</u>, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence, in turn, "means such relevant evidence as a reasonable mind might accept as adequate." <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995). In short, substantial evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance." <u>McCrea v. Comm'r of Soc. Sec.</u>, 370 F.3d 357, 360 (3d Cir. 2004).

1

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review; it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the Commissioner's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (quoting Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001)).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses of expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; and (4) the claimant's educational background, work history, and present age." Holley v. Colvin, 975 F. Supp. 2d 467, 475 (D.N.J. 2013), aff'd 590 F. App'x 167 (3d Cir. 2014).

### B. Five-Step Sequential Analysis

To determine a claimant's disability, the Commissioner must apply a five-step test. 20 C.F.R. § 404.1520(a)(4). Step one is to determine whether the claimant is currently engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as work activity, both physical and mental, that is typically performed for either profit or pay. 20 C.F.R. § 404.1572. If the claimant is found to be engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503. If it is determined that the claimant is not engaged in substantial gainful activity, the analysis moves on to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. §

404.1520(a)(4)(ii).  The regulations provide that an impairment or combination of impairments is severe only when it places a significant limit on the claimant's "physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied.  Id.; Ortega v. Comm'r of Soc. Sec., 232 F. App'x 194, 196 (3d Cir. 2007).

At the third step, the Commissioner must determine whether there is sufficient evidence showing that the claimant suffers from a listed impairment.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, a disability is conclusively established and the claimant is entitled to benefits.  Jones, 364 F.3d at 503.  If not, the Commissioner, at step four, must ask whether the claimant has a "residual functional capacity" such that he is capable of performing past relevant work; if that question is answered in the affirmative, the claim for benefits must be denied.  Id.  Finally, if the claimant is unable to engage in past relevant work, the Commissioner must ask, at step five, "whether work exists in significant numbers in the national economy" that the claimant is capable of performing in light of "his medical impairments, age, education, past work experience, and 'residual functional capacity.'"  20 C.F.R. §§ 404.1520(a)(4)(iii)-(v); Jones, 364 F.3d at 503.  The claimant bears the burden of establishing steps one through four, while the burden of proof shifts to the Commissioner at step five.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

## II.   BACKGROUND

### A.  Procedural History

On January 19, 2012, Plaintiff Gardenia Moore filed an application for supplemental security income.  The application was initially denied on April 17, 2012, and on reconsideration on October 22, 2012.  Tr. 60.  On November 2, 2012, Plaintiff filed a written request for a hearing, which was held on August 13, 2013, in Newark, New Jersey.  Id.  The ALJ determined that Plaintiff

was not disabled under section 1614(a)(3)(A) of the Social Security Act, and Plaintiff's application for benefits was denied on October 22, 2013. Tr. 68. The Appeals Council denied Plaintiff's request for review on April 11, 2015. Tr. 1-4. Having exhausted her administrative remedies, Plaintiff then filed the instant action on June 4, 2015. See Compl., Dkt. No. 1.

### B. Factual Background

Plaintiff is a 48-year-old woman. She has a tenth-grade education and has not worked since 2001. Tr. 39, 41, 187, 362. Plaintiff previously worked as a home health aide and part-time after-school aide in the late 1990s. She stopped attending nursing school in December 1999 due to an allegedly injured shoulder. Tr. 42, 186-87, 192-95, 233-36. Plaintiff claims she stopped working due to pain and mobility issues. Tr. 248.

On January 19, 2012, when Plaintiff was 43 years old, she filed an SSI application, alleging disability due to osteoarthritis, hypertension, cervical radiculopathy, anxiety, depression, numbness and tingling in the right hand, and obesity. Tr. 163-68, 186. According to Plaintiff, in September 2011, she was injured while riding a bus that was involved in an accident. Tr. 46-47, 362, 441, 447. From November 2011 to April 2012, Plaintiff was prescribed Oxycodone and Xanax by her primary care physician, Antonio Apigo, M.D. Tr. 427-38. During Plaintiff's August 2013 administrative hearing, she testified that she saw a chiropractor and orthopedic doctor for almost a year, Tr. 49; that she had been using a cane for almost a year, used a neck brace effectively, and had been prescribed a wheeled walker in May 2013, Tr. 37, 53-54, 613; and that she would begin physical therapy after the administrative hearing, Tr. 43, 51, 616.

Plaintiff has no history of psychiatric hospitalization or recent outpatient psychological treatment. Tr. 248. When Plaintiff resumed treatment in April 2013 with a new primary care

4

physician, Sebastian Kabiawu, M.D., he confirmed that Plaintiff's alleged psychological symptoms were mild.  Tr. 607.

Plaintiff relies on her three children for company and support.  Tr. 249.  She testified, and her daughter provided a written statement, that she is unable to perform any household chores.  Tr. 56, 214, 238.  She has lived with her 16-year-old son since June 2013, and receives additional help with household chores from her 24-year-old daughter, who recently moved out.  Tr. 39, 226, 238.  Plaintiff testified that her typical day consists of listening to music, reflecting on her life, and thanking God.  Tr. 49.  Plaintiff attends church services every Sunday and maintains relationships with the other parishioners.  Tr. 49, 229, 249.  She can go shopping with the help of her children, Tr. 56, and has some computer skills, Tr. 250.

### C. The ALJ's Decision

Following an August 13, 2013 hearing, the ALJ denied Plaintiff's SSI claims.  Tr. 20.  In an October 22, 2013 decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 19, 2012, the benefits application date.  Tr. 22.  The ALJ determined that Plaintiff has the following severe impairments: obesity, osteoarthritis, depression, degenerative disc disease of the cervical and lumbar spine, cervical and lumbar injuries from bus accident, cervical radiculopathy, and polyarthritis.  Id.  The ALJ concluded that Plaintiff's impairments, alone or in combination, did not meet or medically equal the severity of any of the impairments in the Listings.  Id.  The ALJ subsequently found that the Plaintiff has the Residual Functional Capacity ("RFC") to perform sedentary word as defined in 20 C.F.R. § 416.967(a), except that she can perform postural movements (climbing, balancing, kneeling, stooping, crouching, and crawling) no more than occasionally, and can push and pull with her bilateral upper extremities no

5

more than occasionally. Tr. 23-26. In addition, the work must be simple and routine, and not require repetitive neck movement. Id.

The ALJ considered Plaintiff's subjective complaints in assessing her residual functional capacity, but found that her statements concerning the intensity, persistence, and limiting effects the alleged symptoms were not entirely credible. Tr. 24-26. The ALJ found that Plaintiff has no past relevant work, but concluded that jobs exist in significant numbers in the national economy that Plaintiff can perform. Tr. 26-28. In reaching this finding, the ALJ relied on the testimony of a vocational expert. Tr. 27-28. Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act, and denied Plaintiff's claim for SSI benefits. Tr. 28.

### III. ANALYSIS

Plaintiff alleges that the RFC assessment is not supported by substantial evidence because the ALJ did not: (1) fully credit the medical opinion of the Plaintiff's former primary care physician, Dr. Apigo, Pl.'s Br. at 6-13, Dkt. No. 10; (2) evaluate how the intensity, persistence, and duration of Plaintiff's symptoms affect her RFC, Pl.'s Br. at 13-17; and (3) fully credit the medical opinion of Plaintiff's physician, Dr. Kabiawu, that Plaintiff needed a full wheeled walker, Pl.'s Br. at 18-20. None of these arguments prevail because the ALJ's appropriately assessed Plaintiff's impairments under applicable law and her findings are supported by substantial evidence.

#### 1. The ALJ Appropriately Assessed Dr. Apigo's Medical Opinion.

Plaintiff contends that the ALJ erred by failing to fully credit the opinion of her former primary care physician, Dr. Apigo. Plaintiff challenges three of the ALJ's reasons for giving Dr. Apigo's opinion diminished weight: (i) it was too dated to be relevant; (ii) it describes Plaintiff's symptoms only as neck and arm pain, which does not support the conclusion that Plaintiff has

6

standing or walking limitations; and (iii) Dr. Apigo's treatment notes contain very little objective information about Plaintiff's functional limitations.

### i. Dr. Apigo's medical opinion was too dated to be totally relevant.

First, the ALJ did not err by finding Dr. Apigo's opinion "too dated to be totally relevant." Tr. 26. Plaintiff primarily argues that "the ALJ had no basis for his decision to reject [Dr. Apigo's] evidence." Pl.'s Br. at 10. This argument is based on a misreading of the ALJ's decision. In fact, the ALJ did not reject Dr. Apigo's medical opinion, she merely determined that it was not "totally relevant." Tr. 26. An ALJ's analysis is proper if she articulates, at some minimal level, her analysis of the evidence and does not ignore an entire line of evidence. Green v. Shalala, 51 F.3d 96, 101 (7th Cir. 1995). In this case, the ALJ considered the entirety of Dr. Apigo's opinion and clearly explained the basis for affording the opinion less weight: it was relatively old because it was from October 2011, a few months before Plaintiff applied for benefits. See Tr. 24-26. Accordingly, this aspect of the ALJ's analysis was not erroneous. See, e.g., Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011).

### ii. Dr. Apigo only cited to Plaintiff's neck and arm problems.

Second, Plaintiff argues that the ALJ erred in not affording Dr. Apigo's treatment notes greater weight, and that the ALJ was obligated to re-contact Dr. Apigo for a more detailed explanation of the doctor's opinion. Pl.'s Br. at 10-12. Neither contention is correct.

An ALJ is not required to accept the opinion of a medical source when that opinion is given on an issue reserved to the Commissioner, or when that opinion is inconsistent with other evidence or not well supported. See 20 C.F.R. § 416.927. The ALJ, as the finder of fact, has the exclusive responsibility to establish an RFC assessment. 20 C.F.R. § 416.946(c); see also Mays v. Barnhart, No. 02-4520, 2003 WL 22430186, at *4 (3d Cir. 2003). Furthermore, when formulating the RFC

assessment, the ALJ need not undertake an exhaustive discussion of the record, Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000), so long as the decision contains a sufficient discussion of the evidence and explanation of reasoning to enable meaningful judicial review, Diaz v. Commissioner of Social Security, 577 F.3d 500, 504 (3d Cir. 2009); Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). Here, the ALJ's decision makes clear that she considered all of Dr. Apigo's treatment notes, but appropriately used her discretion to afford them diminished weight based on a variety of clearly articulated explanations. See Tr. 24-26. Notably, the ALJ determined that the medical findings of Dr. Eyassu, which contradicted those of Dr. Apigo, were "very credible and based on a thorough, objective examination." Tr. 26. The ALJ was not required to fully credit Dr. Apigo's medical findings because they were inconsistent with other evidence. See 20 C.F.R. § 416.927. Specifically, Dr. Apigo "cites [Plaintiff's] only problems as neck and arm pain, which calls into question the reliability of [her] standing and walking limitations." Tr. 26.

Plaintiff asserts that prior to the application date, Dr. Apigo documented pain in Plaintiff's legs, low back pain, and urinary frequency. Pl.'s Br. at 10. But the ALJ is not obligated to analyze every piece of evidence. Hur v. Barnhart, 94 Fed. App'x 130, 133 (3d Cir. 2004). Moreover, the ALJ here explained that substantial evidence in the opinions of Dr. Eyassu and Dr. Miskin supported her finding to include only a limitation to simple and route work. Accordingly, the ALJ's decision is clearly reasoned and based on substantial evidence. See Ventura, 55 F.3d at 901.

Nor was the ALJ obligated to re-contact Dr. Apigo for clarification of his treatment notes. Plaintiff cites 20 C.F.R. § 416.920b as the basis for this alleged obligation. However, 20 C.F.R. § 416.920b uses permissive language, stating that an ALJ "*may* recontact your treating physician"; "may request additional existing records;" and "*may* ask" for more information. 20 C.F.R. §

416.920b(c)(1)-(4) (emphasis added). The regulations do not compel the ALJ to contact a physician for clarification when the ALJ's decision already rests on substantial evidence, as it does here.

### iii. Dr. Apigo's treatment notes contain little objective information.

Finally, Plaintiff asserts that Dr. Apigo's notes are fully credible and include sufficient medical evidence to compel the findings that Plaintiff "can sit and stand/walk less than 2 hours each in a work day; can walk less than one block; and must use a cane when standing or walking." Pl.'s Br. at 12. As discussed above, an ALJ is not required to accept the opinion of a medical source when that opinion is given on an issue reserved to the Commissioner, or when that opinion is inconsistent with other evidence or not well supported. See 20 C.F.R. § 416.927. Here, the ALJ reviewed Dr. Apigo's treatment notes and explained that they were conclusory and contained little objective information about the Plaintiff's functional status. See Tr. 26. The record supports this finding. See Tr. 243-47, 251-361. Because the record supports the ALJ's findings, and she did not ignore an entire line of evidence, the ALJ did not err by according Dr. Apigo's opinion little weight.

### 2. The ALJ Properly Concluded that the Plaintiff Can Perform the Requirements of Sedentary Work

Plaintiff argues that the ALJ erred because her RFC assessment that Plaintiff can perform sedentary work is not supported by substantial evidence. Plaintiff specifically contends that the ALJ failed to: (1) consider the frequency of Plaintiff's symptoms when evaluating the "intensity, persistence, and limiting effects" of her symptoms in violation of 20 C.F.R. § 416.929, and (2) did not consider the effect of Plaintiff's symptoms on her "concentration, persistence, and pace" in determining her RFC. Pl.'s Br. at 13-17. The Court disagrees.

9

Social Security Regulations (the "Regulations") require the ALJ to examine the "intensity and persistence" of a claimant's symptoms to determine his RFC. 20 C.F.R. § 416.929. Plaintiff concedes that the ALJ here considered the intensity of Plaintiff's symptoms, but she did not sufficiently consider the "frequency of her symptoms." Pl.'s Br. at 15. This is incorrect. The ALJ's opinion demonstrates that she did consider evidence as to the frequency of Plaintiff's symptoms. First, the ALJ considered Plaintiff's own statements. The ALJ explained that although Plaintiff's own testimony indicated that she can only or stand for two hours at a time, and cannot lift even ten pounds, her testimony concerning the intensity, persistence and limiting effects of her symptoms were "not entirely credible" because there is "little objective evidence" supporting her claims. Tr. 24-25. This analysis is consistent with the Regulations, which note that "statements about your pain or other symptoms will not alone establish that you are disabled." 20 C.F.R. § 416.929(a). Next, the ALJ also noted the frequency of Plaintiff's pain in her medical evaluations, including longstanding complaints of chronic pain from September 2011 through January 2012, and an April 2012 evaluation that her ability to stand for prolonged periods was "minimally limited." Tr. 25.

Plaintiff next argues that the ALJ failed to consider Plaintiff's concentration, persistence, or pace when assessing her RFC. This argument is also incorrect. Regulations require that, in addition to activities of daily living, an ALJ must also consider social functioning, concentration, persistence or pace, and episodes of decompensation when assessing a claimant's mental impairments. 20 C.F.R. § 404.1520a(c). Here, the ALJ explicitly considered all four of these categories when rating the severity of Plaintiff's mental impairments. Tr. 23 (finding that "with regard to concentration, persistence or pace, the claimant has moderate difficulties"). The ALJ's subsequent RFC analysis reflected the degree of limitation found in the severity analysis. Tr. 24-

26. Specifically, she notes that agency medical consultants found that Plaintiff had "retained the basic mental and physical capacity to perform the requirements of simple, routine work at a light exertional level," and Dr. Miskin's findings of a "relatively mild level of mental impairment." Tr. 26. See Russo v. Astrue, 421 Fed. App'x 184, 189 (3d Cir. 2011) (ALJ's RFC analysis is proper where it reflected the degree of limitation found in the mental function analysis).

Plaintiff argues that her own testimony, along with Dr. Apigo's opinion regarding the frequency of her symptoms, and her concentration, persistence, and pace suggests that her RFC is more limited than the ALJ found. However, the ALJ provided ample reasons for according Plaintiff's testimony and Dr. Apigo's opinion little weight. In particular, the ALJ noted that Dr. Apigo's notes "contain very little objective information about the claimant's functional status," and that some of Plaintiff's own allegations were not supported by "any significant, objective clinical or diagnostic findings." Tr. 26. The ALJ ultimately supports her RFC assessment with substantial evidence from the record as a whole, including a neurological consultative evaluation, a psychiatric consultative evaluation, an orthopedic evaluation, a general consultative medical examination, Plaintiff's physical therapy record, Plaintiff's emergency room visit record, the evaluations of a more recent primary care physician, and the evaluations of state agency medical consultants. Tr. 23-26.

### 3. The ALJ's finding that a wheeled walker is not medically necessary is supported by substantial evidence

Plaintiff contends the ALJ erroneously relied on Plaintiff's improvements in physical therapy to find that a wheeled walker was not medically necessary. Pl.'s Br. at 18. The argument is unpersuasive. As an initial matter, Plaintiff has not articulated any reason why the ALJ's finding is material. Plaintiff argues that "the occupational base may be significantly eroded for an individual who must use [a wheeled walker] for balance." Pl.'s Br. at 18. While the ALJ's found

that Plaintiff did not demonstrate a need for a wheeled walker at Step Four, this finding was ultimately immaterial to the rest of the ALJ's analysis. At Step Five, the ALJ consulted a vocational expert to evaluate whether there are jobs in the national economy that Plaintiff can perform. The vocational expert found that jobs existed in significant numbers, and "those jobs would remain . . . even if the claimant . . . needed to use a walker for ambulation." Tr. 27.

Even if the ALJ's finding regarding Plaintiff's need for a wheeled walker was material, it was supported by substantial evidence. Where a claimant "presents considerable proof to counter the agency's position, the ALJ must articulate, at some minimal level, his analysis of the evidence." See Green, 51 F.3d at 101. Here, Plaintiff has presented a prescription from May 2013 from her primary care for a walker, along with a note dated August 16, 2013 stating that she was using the walker due to progressive weakness of the lower extremities. Tr. 613-617. The ALJ noted these documents in her opinion. She also articulated reasons why she rejected Plaintiff's claim. Specifically, the ALJ stated that "upon completion of physical therapy in July 2012, [Plaintiff] was noted to have improved significantly in her ability to do all activities, and to have only minimal limitation with standing for prolonged periods." Tr. 26. Therefore, the ALJ's finding was supported by substantial evidence. See Knepp v. Apfel, 204 F. 3d 78, 83 (3d Cir. 2000).

Plaintiff also argues that the ALJ is obligated, pursuant to 20 C.F.R. § 416.920b, to re-contact Plaintiff's treating physician to acquire additional evidence about the medical necessity of a wheeled walked. Pl.'s Br. at 19-20. The Court disagrees. As discussed above, the relevant regulation imposes no such requirement.

### IV. CONCLUSION

Because the Court finds the ALJ's decision is supported by substantial evidence, the Commissioner's denial of disability benefits is **AFFIRMED.**

/s *Madeline Cox Arleo*
**HON. MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**